IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY JASON MACHICOTE,

                 Plaintiff,

      v.

DR. KARL HOFFMAN, MARYAH
MARTIN, ROSLYN HUNEKE AND
DR. PHILLIP WHEATLEY,

               Defendants.

OPINION AND ORDER

21-cv-350-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Anthony Jason Machicote, a prisoner in the custody of the Wisconsin Department of Corrections, is seeking monetary damages under 42 U.S.C. § 1983 from defendants Dr. Karl Hoffman, Maryah Martin, Roslyn Huneke, and Dr. Phillip Wheatley. He contends that these defendants withheld adequate pain medication from him after he had an appendectomy, and in doing so, violated the Eighth Amendment to the United States Constitution. In addition, he alleges that defendants took this action to retaliate against him for having filed a lawsuit and complained about health services staff in the past. For the reasons set out below, I conclude that plaintiff has failed to come forth with evidence that any of the defendants was deliberately indifferent to his pain complaints or retaliated against him. Accordingly, plaintiff's complaint will be dismissed.

1

From the parties' proposed findings, I find the following facts to be material and undisputed, except where otherwise noted.

## FACTS

At all times relevant to this case, plaintiff was an inmate in the custody of the Wisconsin Department of Corrections, housed in the New Lisbon Correctional Institution; defendant Dr. Karl Hoffman was a licensed physician working at the New Lisbon facility; defendant Maryah Martin was employed at the facility as a Nurse Clinician; defendant Roslyn Huneke was the Health Services Manager; and defendant Phillip Wheatley, M.D., was employed by the Department of Corrections' Bureau of Health Services as an on-call physician.

On January 29, 2019, plaintiff experienced epigastric pain, that is, pain or discomfort below the ribs in the area of the upper abdomen, along with some vomiting. He was taken to the Mile Bluff Medical Center in Mauston, Wisconsin, where the doctors determined that the problem was appendicitis. Plaintiff had surgery the same day to remove his appendix and was discharged from the hospital the next day, January 30. He was discharged with a prescription for 30 tablets of hydrocodone-acetaminophen (Norco), with instructions to take one to two tablets every four to six hours for pain control.

Plaintiff has no complaints about the treatment given him at Mile Bluff, but he claims that his pain was deliberately mismanaged by each of the four defendants after he returned to the New Lisbon institution. I will take up his claims as to each defendant in order.

2

A. <u>Karl Hoffman, M.D.</u>

As noted, plaintiff was discharged from the hospital on January 30, 2019, with a prescription for 30 tablets of Norco, with instructions to take one to two tablets every four to six hours for pain control.  Upon plaintiff's return, Dr. Hoffman changed the prescription: in place of the Norco, he prescribed 100 mg of Tramadol, two tablets four times a day for three days.  Both Norco and Tramadol are narcotics intended for treatment of moderate to severe pain.   In Hoffman's opinion, a three-day prescription for Tramadol would be sufficient to control plaintiff's pain immediately following his appendectomy.  Hoffman chose Tramadol for plaintiff because he believed it was safer and had less potential for addiction than Norco.  Also, Tramadol is available in the institution, whereas a prescription for Norco must be ordered from the central pharmacy and can take up to 24 hours to arrive.

Dr. Hoffman's medication instructions for the Tramadol were entered into plaintiff's electronic medical record as follows: "100 mg = 2 tab, Oral, Tab, QID – SC for 3 days, PRN pain, First Dose: 1/30/19 7:00:00 PM CST, Stop Date: 2/2/10 6:59 PM CST."  "QID" means four times a day.   Thus, Dr. Hoffman ordered 12 doses of Tramadol to be administered over three days.  Dr. Hoffman specified that once three days had elapsed after plaintiff began taking Tramadol, plaintiff could switch to alternating doses of two non-narcotic drugs:   Tylenol and naproxen, a non-steroidal anti-inflammatory drug.  (Since plaintiff had not begun taking Tramadol until he returned from the hospital on January 30, his prescription for Tramadol would not have expired until the evening of February 2.)

The Department of Corrections rarely prescribes narcotics or opioids for pain treatment because of their addictive potential and the risk that the inmate will be targeted by other inmates to obtain the drugs he has been prescribed or that he will abuse the drugs himself. It is standard practice at the Department to prescribe narcotics or opioids to treat pain for the first three to five days following an appendectomy. After that, Tylenol or ibuprofen is usually sufficient absent complications.

During the period immediately after his surgery, plaintiff submitted several health service requests, saying he was in severe pain in the area of his stitches and also in his lower back. Dr. Hoffman saw plaintiff on February 4, 2019, examined him closely to be sure he did not have complications from the surgery, and ordered laboratory tests as a check for infection. Although plaintiff's blood pressure was somewhat elevated, from his examination Dr. Hoffman saw no objective reason for the pain plaintiff said he was experiencing. Dr. Hoffman was also aware that plaintiff had a history of substance abuse. Based on his examination, plaintiff's relevant history, and narcotic prescribing best practices, Dr. Hoffman determined that it was not appropriate or necessary to prescribe additional narcotic pain medications.

Dr. Hoffman saw plaintiff two days later, on February 6. Plaintiff said his pain was "barely getting better." The doctor told plaintiff the lab results did not indicate any likelihood that he had an abscess or infection and told him to continue using the prescribed naproxen and Tylenol for pain management. He noted that plaintiff's vital statistics and his

lab results were both within normal limits and the incision was clean and dry with no sign of infection or cellulitis.

Dr. Hoffman saw plaintiff again on February 8, 2019.  Plaintiff told Dr. Hoffman he believed the swelling or bubble at his incision site was getting bigger, rather than smaller. After an examination, the doctor noted that plaintiff did not report any fever or chills, his vital signs were within normal limits, his bowel movements were regular, and although he still had a ridge beneath his incision, it was not red or warm, which might indicate an infection.

Plaintiff returned to the Mile Bluff Medical Center on February 11, 2019 for a post-operative visit.  According to his medical report, he showed no distress and his incision ridge was healing well.  Plaintiff avers that he complained of pain at this visit, but there is no reference in the medical report to this effect.  Plaintiff's surgeon did not prescribe him additional pain medication or narcotics.

On February 21, plaintiff saw Dr. Hoffman, still complaining that his incision site hurt and adding that any pressure imposed near the site produced a burning sensation. Plaintiff asked Hoffman whether a nerve might have been cut during the operation, but on examination, the doctor reported the incision as intact, with no signs of inflammation.  He suspected that the surgeon had been aggressive in closing the muscular layers along the length of the incision and that the resulting ridge would eventually heal and flatten.

At none of his appointments with plaintiff did Dr. Hoffman find any objective signs or symptoms that matched the subjective pain that plaintiff was reporting.  Accordingly, he

did not believe it was necessary or appropriate to prescribe him any stronger pain medications and began to suspect plaintiff was exaggerating his pain to seek narcotics.

### B. Nurse Clinician Maryah Martin

As a nurse clinician, Martin was responsible for providing skilled nursing care to incarcerated inmates such as plaintiff.  Her duties included patient assessment, treatment, assisting the physician in providing medical services, emergency care, managing medications, and maintaining medical records.

Defendant Martin met with plaintiff on January 30 after his return to the institution and reviewed his post-surgery instructions.  She told him he had a six-week recreation restriction, but could shower the next day, once his dressing had been removed.  Defendant Martin forwarded plaintiff's paperwork to Dr. Hoffman for his review and noted that plaintiff's pain medication had been put on the officer's cart to be dispensed at medication pass.

The parties agree that Martin and plaintiff discussed his pain medication during that conversation, but they disagree about what was said.  According to plaintiff, Nurse Martin told him that he could take the Tramadol only three times a day, specifically at 6 a.m., 11 a.m., and 7 p.m.  Plaintiff says he asked Martin at the outset what he should do if the Tramadol stopped working and she recommended he take naproxen and Tylenol.

Defendant Martin does not recall telling plaintiff that he could only take his Tramadol at three specific times a day.  She avers that she would have based her directions

on what was written in the electronic medical record, which showed the medicine was "QID," which she understood to mean "four times a day."  She recalls giving plaintiff examples of how he could spread out his medication to provide better coverage for his pain, but does not recall telling him he could take his medications only at three specified times. Defendant Martin believes that if plaintiff thought this was the case, it was a misunderstanding.

Plaintiff says that when he tried the plan defendant Martin had outlined for taking his medication, he woke at 2 a.m. in extreme pain, which he suffered until medication pass at 6 a.m.  Plaintiff believes that she provided inaccurate dosing information intentionally because he had filed complaints about her previously and the two of them had a history of negative interactions.  Plaintiff also alleges that she gave him bad advice related to taking naproxen, but he does not say what it was.

## C. Health Services Manager Roslyn Huneke

Defendant Huneke was the Health Services Request Manager at New Lisbon.  On February 5, 2019, plaintiff sent her three health service requests, complaining in the first one that he was experiencing extreme pain in his hip around the staples from his operation and it was affecting his sleep.  After defendant Huneke reviewed plaintiff's chart, she responded to him that Dr. Hoffman had seen him the day before, knew about his pain levels, and would be following up with him soon.

7

Defendant Huneke reviewed another health services request from plaintiff, also dated February 5, 2019, but not received by the health services unit until February 6.  In this request, plaintiff complained that defendant Martin had misled him about how often he could receive his pain medication after he returned from the hospital.  Defendant Huneke reviewed plaintiff's chart, and noted that he had had an order for two tablets of Tramadol, four times a day for three days upon his return to the prison on January 30.  She noted that directions were given based on what is written in the electronic medical record, which showed that the medicine prescribed for him on January 30 was marked QID, meaning that it was to be dispensed four times a day, so there was no reason to believe Martin had given him inaccurate information.

In a third health services request to defendant Huneke, also sent on February 5, plaintiff said that the naproxen and Tylenol dispensed to him were not working.  He also asked whether he should continue taking the naproxen when the Mile Bluff Medical Center had said it was discontinued.  Defendant Huneke reviewed this request on February 6.  She responded that the naproxen was not discontinued; it was marked as discontinued only because plaintiff had not been taking it when he was admitted to the medical center.  She noted that Dr. Hoffman had reviewed the records and had continued the prescription for naproxen, which to her meant that it was appropriate for plaintiff to continue taking it.  She saw no need to do anything else in response to plaintiff's health service requests.

## D. Dr. Phillip Wheatley

Dr. Wheatley was the on-call physician for the New Lisbon facility from January 28 to February 3, 2019, covering the hours from 4:30 p.m. to 7:45 a.m. only. On-call physicians are not present onsite but receive calls from nursing staff when an advance care provider such as a physician or advanced practice nurse practitioner is not in the institution. Nurses call them with questions about patient care when the questions cannot wait until the advance care provider returns to the institution. Id.

Dr. Wheatley does not recall receiving a telephone call about plaintiff or making any decisions about his care. Ordinarily, when an inmate returns from an offsite visit with a recommendation for medication, Dr. Wheatley will prescribe it, provided it is available through the Department of Corrections pharmacy. It is the doctor's opinion that if an onsite nurse had reported to him that plaintiff's condition required further intervention, he would have ordered additional medication for plaintiff, or, if necessary, told the onsite nurse to refer plaintiff to the hospital.

## OPINION

## I. Eighth Amendment Claim

Plaintiff's claim is a fairly straightforward one: he contends that he was denied effective medication by one or more of the defendants at a time when he was suffering intense pain after an appendectomy. He believes that the denial violated his rights under the Eighth Amendment to the United States Constitution, which protects prisoners from

prison conditions that cause the "wanton and unnecessary infliction of pain," Gregg v. Georgia, 428 U.S. 153, 169-73 (1976); see also Estelle v. Gamble, 429 U.S. 97, 103-04 (1976) (extending decision in Gregg to apply to acts of "deliberate indifference to serious medical needs of prisoners.").

The burden of proving that prison officials violated the Eighth Amendment is on the prisoner, and it is "a heavy one." A prison official "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996). Inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Pyles v. Fahim, 771 F.3d 403, 411 (7th Cir. 2014); Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996). However, at this stage of the proceedings, the facts of the case are reviewed in the light most favorable to the plaintiff. Machicote v. Roethlisberger, 969 F.3d 822, 825 (7th Cir. 2020).

Plaintiff's claim is essentially that each of the defendants was deliberately indifferent to the pain he was suffering after his appendectomy when they denied him medication to reduce the pain. To meet this burden, plaintiff must show that (1) he was suffering from an objectively serious medical condition, that is, one that a defendant had determined required treatment or one in which the need for treatment would have been obvious to a lay person, Pyles, 771 F.3d at 409, citing Knight v. Wiseman, 590 F.3d 458, 463 (7th Cir.

10

2009), and (2) the defendant knew about plaintiff's condition and the pain he was experiencing and disregarded both.  Id.  Defendants do not deny that plaintiff's post-operative pain constituted a serious medical need, but they dispute that plaintiff can show that any of them was deliberately indifferent to it.

## A.  Dr. Hoffman

Plaintiff claims that Dr. Hoffman provided him with insufficient pain management after his surgery.  As an initial matter, plaintiff insists that he is not arguing that he had a right to "specific treatment or medication."  Thus, I do not understand plaintiff to be challenging Dr. Hoffman's decision to prescribe Tramadol for pain relief immediately after the surgery instead of the Norco recommended by the surgeon at Mile Bluff.  This is a wise concession.  Even though plaintiff's surgeon might have recommended the Norco, "evidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim."  Burton v. Downey, 805 F.3d 776, 786 (7th Cir. 2015).  Dr. Hoffman explained that he chose to prescribe Tramadol instead of Norco because it offers similar pain relief with less potential for addiction, and plaintiff has no evidence to suggest that Dr. Hoffman's choice of medication was outside the bounds of accepted professional judgment.  Burton, 805 F.3d at 785–86 (doctor's refusal to prescribe narcotic did not violate detainee's constitutional rights, even though another doctor had prescribed it).

Before proceeding, I digress momentarily to note that there is conflicting evidence in the record about how many doses of Tramadol plaintiff actually received.  Plaintiff does not dispute that Dr. Hoffman prescribed 12 doses (24 pills total), an amount that was supposed to last until 7 p.m. on February 2.  Plaintiff swears, however, that his medication "card" only held 12 *pills,* and that his Tramadol ran out around 11 a.m. on February 1.  Defendants refute this contention by pointing to plaintiff's Medication Administration Record, dkt. #39, exh. 1, which shows that he received eight doses, or 16 pills, with the last dose being administered at on 1:13 a.m. on February 2.  But the medication record at most gives rise to a disputed issue of fact about how many doses plaintiff actually received.   More important, it appears to confirm plaintiff's assertion that he did not receive all the doses that were prescribed for him.  Defendants acknowledge having no explanation for this.

Nevertheless, I agree with defendants that this dispute is immaterial.  It is well-settled that claims under § 1983 must be based on a defendant's personal involvement in the alleged constitutional violation, and not just on a defendant's position as a supervisor or administrator.  Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012); Burks v. Raemisch, 555 F.3d 592, 593-94 (7th Cir. 2009).  Plaintiff has not alleged, much less adduced admissible evidence to show that Dr. Hoffman (or any other defendant) was personally responsible for administering his medications or was aware that he had not actually received all of the Tramadol that Dr. Hoffman had prescribed for him prior to the prescription expiring on February 2.  (As discussed below, he suggests that a Nurse Rink knew this, but

she is not a defendant.)  Without such evidence of personal involvement, plaintiff cannot establish deliberate indifference on the part of any defendant for the missed doses.

Rather, plaintiff says Dr. Hoffman demonstrated deliberate indifference when, from February 4 - 21, he did not prescribe additional narcotics and continued to recommend that plaintiff take naproxen and Tylenol for pain management even though those medications were not helping to control plaintiff's "extreme pain." Br. in Opp., dkt. #32, at 1.  Plaintiff acknowledges that Dr. Hoffman saw him frequently, but alleges that the doctor was not sympathetic to his complaints of pain, saying there was no magic wand to make plaintiff's pain go away and laughing at his requests for additional Tramadol or Norco.  Dkt. #35, ¶¶37-43.

Even if I assume that Dr. Hoffman made dismissive remarks, such statements alone are not sufficient to show deliberate indifference to plaintiff's medical needs.  DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (verbal harassment or rude comments by prison staff do not violate the Constitution); Patton v. Przybylski, 822 F.2d 697, 700 (7th Cir. 1987) (unprofessional conduct does not violate the Constitution).  To prove deliberate indifference, plaintiff had to submit evidence showing that Dr. Hoffman's refusal to prescribe additional medications beyond naproxen and Tylenol was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible did not actually base the decision on such a judgment." Jackson v. Kotter, 541 F.3d 688, 697 (7th Cir. 2008) (quoting Sain v. Wood, 512 F.3d 886, 895 (7th Cir. 2008)).

Plaintiff does not deny that Dr. Hoffman met with him frequently, gave him close attention following his appendectomy, and arranged for laboratory testing to be undertaken to check for possible infection when plaintiff continued to complain about pain. Moreover, plaintiff has also has adduced no medical evidence or opinion to call into question defendants' evidence that prescribing narcotics for a period of only three to five days following an appendectomy is within generally acceptable medical standards, particularly in the institution setting, which poses special risks of narcotics abuse. Although plaintiff disagrees with the doctor's decisions about which medications were appropriate for his situation and how long the stronger pain medications should have been available to him, mere "disagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient, by itself, to establish an Eight Amendment violation." Pyles, 771 F.3d at 409 (citing Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006)). Medical staff are entitled to deference when choosing an appropriate pain reliever, and their desire to avoid narcotics is appropriate given the associated heightened risks of abuse and addiction that narcotics pose. See Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1074 (7th Cir. 2012) (prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards").

Plaintiff points out that in 2017, Dr. Hoffman prescribed him Tramadol to take every six hours for four weeks after he underwent ankle surgery. Plaintiff contends that this

14

diminishes the credibility of Dr. Hoffman's purported concern about plaintiff's past history of substance abuse and his reluctance to prescribe narcotics, and supports his theory that Dr. Hoffman withheld narcotics as retaliation for plaintiff's having filed lawsuits against him. However, merely because Dr. Hoffman may have prescribed narcotics for plaintiff in 2017 to treat an entirely different condition does not suggest that Dr. Hoffman's decision two years later not to prescribe the same narcotics for plaintiff's reported post-appendectomy pain was outside the bounds of reasonable medical judgment. There is no one "right" way to treat a specific medical condition or pain, and merely because Dr. Hoffman may have chosen a different course of action for a different injury in the past does not permit an inference that he abandoned his medical judgment in this case.

Plaintiff also insists that Dr. Hoffman erred by overlooking his vital signs, which he claims were "elevated" and therefore indicative of pain. However, plaintiff has not submitted any evidence to show that his vitals were outside the range of what is deemed medically normal, except for his blood pressure on February 4, which Dr. Hoffman acknowledges was high that day. More important, he presents no expert testimony to support his suggestion that high blood pressure is a clear indicator of pain. His own lay opinion is insufficient. Gil v. Reed, 381 F.3d 649, 659 (7th Cir. 2004) (expert testimony is needed when symptoms exhibited by the plaintiff are beyond a layperson's grasp).

There is no question that plaintiff suffered considerable pain as a result of his appendectomy. However, the Eighth Amendment does not require that prison doctors keep an inmate pain-free. Snipes, 95 F.3d at 592. "Whether and how pain associated with

15

medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations." Id. This is not such a situation. Plaintiff has adduced no evidence showing that Dr. Hoffman's medication decisions were not within accepted professional standards, that he received "grossly inadequate medical care" from Dr. Hoffman or that the doctor was not exercising reasonable medical judgment. Under these circumstances, no reasonable jury would find Dr. Hoffman is not entitled to judgment in his favor.

## B. Nurse Martin

With respect to defendant Maryah Martin, plaintiff alleges that she intentionally gave him misleading information about the frequency with which he was to take the Tramadol prescribed for him by Dr. Hoffman. According to plaintiff, Martin told him he could have his medication only at 7 p.m., 6 a.m. and 11 a.m., which led to his suffering extreme abdominal pain from 2 a.m. until approximately 6 a.m. on January 31.

Martin has averred that she meant to counsel plaintiff on how to space out his medication to best manage his pain and if he understood that to mean he could get his medication only three times a day, that was a misunderstanding. As noted previously, mistakes, inadvertent errors, negligence, gross negligence, or even malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. Vance, 97 F.3d at 992. Plaintiff insists that Martin deliberately misled him to make him suffer in retaliation for her filing complaints about her, but he offers no evidence to support this apart from his own subjective belief. For example, there is no evidence that Martin told plaintiff she didn't

care if he was in pain or that she was dismissive of his concerns of pain coverage between

doses.  To the contrary, as plaintiff admits, Martin told plaintiff he could use Tylenol and

naproxen between Tramadol doses.  Not only is this inconsistent with a desire to make

plaintiff suffer needlessly, but plaintiff offers no evidence to suggest that Martin would have

known that using those medications to bridge the gap between narcotics doses would have

been ineffective in reducing plaintiff's pain to a tolerable level.  In short, even crediting

plaintiff's assertion that Martin misadvised him about when he could take his Tramadol, he

has not adduced evidence sufficient to support an inference that she did so on purpose,

knowing that plaintiff faced a substantial risk of serious harm if he followed her advice.  At

most, he has shown that she was negligent, which does not violate the Eighth Amendment.


## C.  HSU Manager Huneke

Plaintiff contends that defendant Huneke deprived him of his constitutional rights

under the Eighth Amendment in three respects:  (1) she failed to dispatch a nurse to check

on him after he complained of extreme pain and sleep deprivation;  (2) she "covered" for

defendant Martin by agreeing that plaintiff could take naproxen for pain relief; and (3) she

covered for Martin again when she did not investigate whether Martin gave plaintiff

incorrect information on January 30 about the times at which he could obtain Tramadol.

However, none of these allegations rises to the level of deliberate indifference.

First, when plaintiff complained to Huneke about his pain, she had a reason for not

arranging for him to be seen by a nurse immediately.  The record showed that Dr. Hoffman

had seen plaintiff the day before when he was complaining of pain and Huneke knew the doctor would be following up with him again soon.  Inmates are not constitutionally entitled either to "demand specific care" or even to receive the "best care possible;" rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011) (citing Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997)).  Apart from his own allegation that Huneke did not take his complaint seriously enough, plaintiff has adduced no evidence from which a jury could find that it was blatantly inappropriate for Huneke to decide that he did not need to be seen by a nurse on February 5, having been seen the day before by Dr. Hoffman and having naproxen and Tylenol available for pain relief.

Plaintiff's other two claims require little discussion.  The mere fact that Huneke doubted that Martin had provided him with incorrect information about his medication dosing when plaintiff complained about it several days later does not demonstrate that Huneke was deliberately indifferent to his complaints of pain. Plaintiff's complaint about Martin concerned a past error that he admits affected him only in the early morning hours of January 31.  As for Huneke's advice that he could take naproxen, plaintiff has not submitted any admissible evidence from which a jury could find this advice was negligent, much less blatantly inappropriate.

Contrary to plaintiff's suggestion, the record shows that Huneke took his pain complaints seriously and took reasonable actions in response to them.  There is no support

for his claims that she was deliberately indifferent to his complaints or that her actions violated his rights under the Eighth Amendment.

### D.  Dr. Wheatley

Plaintiff's complaint about Dr. Wheatley can be disposed of quickly because there is no evidence in the record that Dr. Wheatley was consulted about plaintiff's condition during the period from January 28, 2019 to February 3, 2019, when he was the on-call physician. The doctor does not recall receiving any telephone call concerning plaintiff during the period at issue and plaintiff's medical record does not indicate that the doctor was called about plaintiff during that time.  Plaintiff's only evidence that Dr. Wheatley was contacted consists of a statement by Nurse Rink, who is not a defendant.  According to plaintiff, Rink told him on February 2 that she would phone the on-call doctor after plaintiff submitted a Health Services Request on that date stating that he had been told during medication pass that morning that no more pain pills were available.  Dkt. #35, p. 160.  As proof that Rink made the call (and spoke to Wheatley), plaintiff points to her response to the Health Services Request, where she wrote:  "Pain meds not being renewed @ this time – order was to dispense 12."  Id.  However, Rink's alleged statements are inadmissible hearsay and cannot be used to create a genuine dispute of fact.  Cairel v. Alderden, 821 F.3d 823, 830 (7th Cir. 2016) (when evidence is inadmissible hearsay, courts may not consider it).  Without any admissible evidence to show that Dr. Wheatley was even aware of plaintiff or his medical concerns, there is no basis on which Dr. Wheatley could be held liable for any pain plaintiff

suffered following his appendectomy.  George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (only persons who cause or participate in violations are liable under § 1983).


## II.  Retaliation

Plaintiff was allowed to proceed on a claim that defendants failed to provide him with pain medication in retaliation for his having previously filed a lawsuit and complaints about health services staff.  To succeed on his claim, plaintiff must adduce evidence from which a jury could find:  (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decision to take those actions.  Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff has not adduced evidence sufficient to raise a material dispute of fact on all of these elements.  First, he has not established that any of the defendants intentionally deprived him of adequate pain medication, so he has not established a deprivation.  Second, even though defendants Hoffman and Martin were aware that he had filed previous complaints, plaintiff has nothing beyond his own belief to support his claim that their alleged failure to adequately treat his pain was motivated in any way by those complaints.  Accordingly, defendants are entitled to summary judgment on his retaliation claim.

CONCLUSION

After considering plaintiff's allegations about defendants Hoffman, Martin, and Huneke, I conclude that, even if those allegations could be proved, they fall far short of supporting an inference that defendants were deliberately indifferent to his claims of ongoing pain or retaliated against him following his surgery in January 2019. This is not a case in which there is a genuine dispute as to a material fact that would permit a finding of liability if proven. In addition, there is no evidence that Dr. Wheatley was ever informed of plaintiff's appendectomy or of any need for medical services before or after the operation. Therefore, I conclude that all of the defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that the motion of defendants Dr. Karl Hoffman, Nurse Maryah Martin, Health Services Manager Roslyn Hunneke, and Dr. Phillip Wheatley for summary judgment on plaintiff Anthony J. Machicote's claim for damages resulting from their alleged failure to provide him pain medication he believed he needed following his appendectomy on January 29, 2019, dkt. # 23, is GRANTED. Plaintiff's claims against all of the defendants are DISMISSED and the clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 30th day of September, 2022.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge